

1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  GREGORY PERRY,                         )   No. C 10-2548 LHK (PR)
                                           )
12              Plaintiff,                 )   ORDER GRANTING DEFENDANT
                                           )   KALISHER'S MOTION TO
13     vs.                                 )   DISMISS; GRANTING
                                           )   DEFENDANT KELSO'S MOTION
14  GLORIA KALISHER and J. CLARK           )   FOR SUMMARY JUDGMENT
    KELSO,                                 )
15                                         )   (Docket Nos. 33, 35, 38)
                Defendants.                )
16  _____)

17          Plaintiff, proceeding *pro se*, filed a fourth amended civil rights complaint pursuant to 42

18  U.S.C. § 1983 against four Defendants, alleging that they were deliberately indifferent to his

19  serious medical needs.  On April 28, 2011, the Court ordered Plaintiff to provide accurate

20  information within thirty days regarding the location of Defendants Susan Pido and Daniel

21  Jardini, so the Marshal could serve them.  On June 7, 2011, after receiving no communication

22  from Plaintiff, the Court dismissed unserved Pido and Jardini under Federal Rule of Civil

23  Procedure 4(m).  Almost two months later, on August 3, 2011, Plaintiff filed a motion requesting

24  a continuance of this action so as to locate the unserved Defendants.  He alleged that on March

25  22, 2011, he was arrested for a parole violation.  After his parole hearing, he was released into a

26  residential drug treatment program in April 2011.  Plaintiff states that he was unaware that he

27  was directed to locate unserved Defendants until June 27, 2011, when his parole agent brought

28

1   him the documents.  The Court had previously advised Plaintiff that it was his responsibility to

2   prosecute this case, keep the Court informed of any address changes, and comply with Court

3   orders in a timely fashion.  (Docket No. 22.)  Plaintiff's request for an indefinite continuance to

4   locate unserved Defendants, who have already been dismissed, is DENIED.  Plaintiff is not

5   prohibited from initiating a new action against unserved Defendants once he is able to provide

6   sufficient information regarding their location.

7         On April 28, 2011, Defendant Federal Receiver J. Clark Kelso ("Kelso) moved for

8   summary judgment, or alternatively, summary adjudication.  On May 2, 2011, Defendant Dr.

9   Gloria Kalisher ("Dr. Kalisher") moved to dismiss this action for failure to exhaust.  Plaintiff has

10   not filed an opposition.  Having carefully considered the papers submitted, the Court GRANTS

11   Dr. Kalisher's motion to dismiss, and GRANTS Kelso's motion for summary judgment, for the

12   reasons set out below.

13                           **BACKGROUND**[1]

14         According to the operative complaint, Plaintiff told Dr. Kalisher that he needed

15   medication to treat his condition of coccidioidmycosis meningitis.  (Fourth Am. Compl. at 3.)

16   Plaintiff alleges that Dr. Kalisher looked at his medical file, and disregarded Plaintiff's concerns

17   because the file did not indicate a positive diagnosis of coccidioidmycosis meningitis.  (*Id.*)

18   Plaintiff's medical file showed that he was receiving the following medications:  fluconazole,

19   vitamin C, skin care lotion, and A & D ointment for treatment of coccidioidmycosis.  (*Id.*)

20   Plaintiff complains that Dr. Kalisher's refusal to send him to emergency care resulting in him

21   having a stroke and being sent to Salinas Valley Memorial Hospital, where he was properly

22   diagnosed with coccidioidmycosis meningitis.  (*Id.*)

23         Also, Plaintiff states that on some unspecified date, Kelso did not take any "responsible

24   action" after Plaintiff sent him a letter regarding inadequate medical care from health care staff

25   at the prison.  (*Id.* at 6.)  Kelso was appointed as the Federal Receiver for the California prisons'

26   medical care system by Judge Thelton E. Henderson on January 23, 2008 in *Plata, et al. v.*

27

28         [1] The following facts are undisputed unless otherwise indicated.

1   *Schwarzenegger, et al.*, Case No. 01-1391 TEH (N.D. Cal.).  Plaintiff alleges that Kelso did

2   nothing to stop him from "being mistreated for his condition of coccidioidmycosis meningitis."

3   (Fourth Am. Compl. at 6.)  Plaintiff argues that because of Kelso's omissions, his medical

4   condition has worsened.  (*Id.*)

5                    **MOTION TO DISMISS FOR FAILURE TO EXHAUST**

6   I.   <u>Legal Standard</u>

7        The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

8   with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

9   prisoner confined in any jail, prison, or other correctional facility until such administrative

10  remedies as are available are exhausted."  28 U.S.C. § 1997e(a).  Nonexhaustion under

11  § 1997e(a) is an affirmative defense; that is, Defendants have the burden of raising and proving

12  the absence of exhaustion.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding a

13  motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the

14  pleadings and decide disputed issues of fact.  *Id.* at 1119-20.  If the Court concludes that the

15  prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without

16  prejudice.  *Id.* at 1120.

17       Failure to exhaust is an affirmative defense under the PLRA.  *Jones v. Bock*, 549 U.S.

18  199, 211 (2007).  Defendants have the burden of raising and proving the absence of exhaustion,

19  and inmates are not required to specifically plead or demonstrate exhaustion in their complaints.

20  *Id.* at 215-17.  As there can be no absence of exhaustion unless some relief remains available, a

21  movant claiming lack of exhaustion must demonstrate that pertinent relief remained available,

22  whether at unexhausted levels or through awaiting the results of the relief already granted as a

23  result of that process.  *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005).

24       The California Department of Corrections and Rehabilitation ("CDCR") provides its

25  inmates and parolees the right to appeal administratively "any departmental decision, action,

26  condition, or policy which they can demonstrate as having an adverse effect upon their welfare."

27  Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides its inmates the right to file administrative

28

Order Granting Defendant Kalisher's Motion to Dismiss; Granting Defendant Kelso's Motion For Summary
Judgment

1    appeals alleging misconduct by correctional officers.  Cal. Code Regs. tit. 15, § 3084.1(e).  In

2    order to exhaust available administrative remedies within this system, a prisoner must submit his

3    complaint on CDCR Form 602 ("602") and proceed through several levels of appeal:

4    (1) informal level grievance filed directly with any correctional staff member, (2) first formal

5    level appeal filed with one of the institution's appeal coordinators, (3) second formal level appeal

6    filed with the institution head or designee, and (4) third formal level appeal filed with the CDCR

7    director or designee ("Director's level").  Cal. Code Regs. tit. 15, § 3084.5; *Brodheim v. Cry*,

8    584 F.3d 1262, 1264-65 (9th Cir. 2009).  This satisfies the administrative remedies exhaustion

9    requirement under Section 1997e(a).

10   II.   Analysis

11        Dr. Kalisher argues that Plaintiff failed to exhaust his claim against her.  Dr. Kalisher has

12   submitted copies of both appeals that Plaintiff filed at California Training Facility ("CTF").

13   (Decl. Pherigo at ¶ 5.)  She argues that neither appeal exhausted Plaintiff's underlying federal

14   claim that she exhibited deliberate indifference to his serious medical needs.

15        Administrative remedies are not exhausted where the grievance, liberally construed, does

16   not have the same subject and same request for relief.  *See generally O'Guinn v. Lovelock*

17   *Correctional Center*, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (concluding that with liberal

18   construction, grievance requesting a lower bunk due to poor balance resulting from a previous

19   brain injury was not equivalent to, and therefore did not exhaust administrative remedies for,

20   claims of denial of mental health treatment in violation of the ADA and Rehabilitation Act).

21        Plaintiff arrived at CTF on April 30, 2009.  (Doc. No. 10 at 3.)  On July 15, 2009, he

22   began to experience pain throughout his body.  (*Id.*)  He was referred to Dr. Kalisher on July 17,

23   2009, and saw her the same day.  (*Id.*)  In September 2009, Plaintiff was transferred to Salinas

24   Valley State Prison.  (*Id.* at 5.)

25        In his first administrative appeal, CTF S-09-1890, Plaintiff grieved that, on July 15, 2009,

26   Correctional Officer McFarland refused to issue him a pass to the medical clinic after Plaintiff

27   complained to him about experiencing Valley Fever symptoms.  (*Id.*, Ex. A.)  Plaintiff requested

28

1   that McFarland be reprimanded for his unprofessional reactions.  (*Id.*)  Plaintiff's appeal was

2   ultimately denied at the Director's Level of Review.

3          Although this grievance touched on Plaintiff's medical condition, Plaintiff requested that

4   McFarland be reprimanded for disbelieving his complaints.  This 602 could not have alerted

5   prison officials to his claim that, as a result of Dr. Kalisher's refusal to summon emergency care

6   for him, he suffered a stroke.  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("a

7   grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.")

8   (internal quotation marks omitted).  Plaintiff's grievance did not include sufficient information

9   "to allow prison officials to take appropriate responsive measures." *Id.* (citation and internal

10  quotation omitted) (no exhaustion where grievance complaining of upper bunk assignment failed

11  to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that

12  order).

13         In his second administrative appeal, CTF D-09-12516, Plaintiff grieved that he was not

14  receiving requested copies of his medical records from January through August 2009.  (*Id.*, Ex.

15  B.)  His request for relief was to receive copies of those medical records so that he could litigate.

16  (*Id.*)  At the First Level of Review, Plaintiff's appeal was granted.  (*Id.*)  Like Plaintiff's first

17  administrative appeal, this grievance was also insufficient to alert prison officials to the nature of

18  Plaintiff's federal complaint that he believed Dr. Kalisher disregarded his medical concerns.  *See*

19  *Griffin*, 557 F.3d at 1120.  Prison officials would not have had any reason to infer from this

20  grievance that Plaintiff believed his medical care under Dr. Kalisher was improper.  *See id.*

21         Because neither grievance, liberally construed, had the same subject and request for relief

22  as that alleged in this federal action, Plaintiff has failed to exhaust his claim. Accordingly, Dr.

23  Kalisher's motion to dismiss is GRANTED.[2]

24  ///

25

26         [2] Dr. Kalisher also moves to dismiss the claims against Pido and Jardini.  However, the
    Court has already dismissed those Defendants under Rule 4(m).  Further, counsel for Dr.
27  Kalisher has never entered her appearance on behalf of these Defendants.  Accordingly, the
    motion to dismiss claims against Pido and Jardini for failure to exhaust is denied.
28

Order Granting Defendant Kalisher's Motion to Dismiss; Granting Defendant Kelso's Motion For Summary
Judgment

1

**MOTION FOR SUMMARY JUDGMENT**

2   I.   Legal Standard

3   Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

4   that there is "no genuine issue as to any material fact and that the moving party is entitled to

5   judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

6   the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

7   as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

8   verdict for the nonmoving party.  *Id.*

9   The party moving for summary judgment bears the initial burden of identifying those

10   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

11   issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

12   party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

13   reasonable trier of fact could find other than for the moving party.  But on an issue for which the

14   opposing party will have the burden of proof at trial, the moving party need only point out "that

15   there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

16   Once the moving party meets its initial burden, the nonmoving party must go beyond the

17   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

18   genuine issue for trial."  Fed. R. Civ. P. 56(e).  The Court is only concerned with disputes over

19   material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

20   *Anderson*, 477 U.S. at 248.  It is not the task of the Court to scour the record in search of a

21   genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

22   nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

23   precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the

24   moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

25   II.   Analysis

26   Plaintiff claims that Kelso failed to take action after he learned that Plaintiff was

27   receiving "inadequate medical care" from prison health care staff.  (Fourth Am. Compl. at 6.)

28

Order Granting Defendant Kalisher's Motion to Dismiss; Granting Defendant Kelso's Motion For Summary
Judgment
P:\pro-se\sj.lhk\cr.10\Perry548mtdmsj          6

1   He alleges that, as a result of Kelso's inaction, Plaintiff's medical condition has worsened, he has

2   chronic arthritis, and he has to take medication for the remainder of his life.  (*Id.*)  Kelso argues

3   that he was not personally involved in Plaintiff's care at any time, and further, that he was not

4   aware of Plaintiff's medical needs.  (MSJ at 9-11.)

5       Deliberate indifference to serious medical needs violates the Eighth Amendment's

6   proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97, 104

7   (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*,

8   *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A

9   determination of "deliberate indifference" involves an examination of two elements: the

10  seriousness of the prisoner's medical need and the nature of a defendant's response to that need.

11  *See McGuckin*, 974 F.2d at 1059.

12      A "serious" medical need exists if the failure to treat a prisoner's condition could result

13  in further significant injury or the "unnecessary and wanton infliction of pain."  *McGuckin*, 974

14  F.2d at 1059 (*citing Estelle*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor

15  or patient would find important and worthy of comment or treatment; the presence of a medical

16  condition that significantly affects an individual's daily activities; or the existence of chronic and

17  substantial pain are examples of indications that a prisoner has a "serious" need for medical

18  treatment.  *Id.* at 1059-60 (*citing Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

19      An administrator or supervisor may be liable for deliberate indifference to a serious

20  medical need, for instance, if he or she fails to respond to a prisoner's request for help.  *Jett v.*

21  *Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006).  "It has long been clearly established that

22  '[s]upervisory liability is imposed against a supervisory official in his individual capacity for his

23  own culpable action or inaction in the training, supervision, or control of his subordinates, for his

24  acquiescence in the constitutional deprivations of which the complaint is made, or for conduct

25  that showed a reckless or callous indifference to the rights of others.'"  *Preschooler II v. Davis*,

26  479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted).  A supervisor therefore generally is

27  liable "if there exists either (1) his or her personal involvement in the constitutional deprivation,

28

Order Granting Defendant Kalisher's Motion to Dismiss; Granting Defendant Kelso's Motion For Summary
Judgment
P:\pro-se\sj.lhk\cr.10\Perry548mtdmsj          7

1    or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

2    constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotation marks

3    and citation omitted). "The requisite causal connection can be established . . . by setting in

4    motion a series of acts by others, . . . or by knowingly refus[ing] to terminate a series of acts by

5    others, which [the supervisor] knew or reasonably should have known would cause others to

6    inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks and citation omitted).

7        Here, even assuming that Plaintiff had a "serious" medical need, there is an absence of

8    evidence that Kelso knew that Plaintiff faced a substantial risk of serious harm, and then

9    disregarded that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S.

10   825, 837 (1994). Kelso was not personally involved in the medical care of Plaintiff. *See Starr*,

11   652 F.3d at 1207. Kelso is an administrator, and does not examine or treat patients. (Decl.

12   Kelso at ¶ 3.) He did not have any direct involvement in Plaintiff's care. (*Id.* at ¶ 7.) As the

13   Federal Receiver, Kelso is responsible for "bringing the level of medical care provided to

14   California's inmates up to federal constitutional standards." (*Id.* at ¶ 2.) He rarely "focus[ed] on

15   instances of individual inmate care given at the institutional level nor would it [have been]

16   feasible for [him] to be involved in decisions regarding individual inmates." (*Id.* at ¶ 3.) He

17   made broad policy decisions affecting 160,000 inmates in thirty-three prisons to "remedy the

18   systemic problems within the prison medical health care system." (*Id.*) That Kelso received

19   Plaintiff's letter about inadequate medical care (Fourth Am. Compl. at 6) does not demonstrate

20   that Kelso participated in any alleged constitutional violations. Therefore, there is an absence of

21   evidence that Kelso had any personal involvement in the medical care of Plaintiff.

22       Moreover, even assuming there was a constitutional violation, there is an absence of

23   evidence connecting Kelso's actions to that violation. *See Starr*, 652 F.3d at 1207. Plaintiff

24   alleges Kelso failed to prevent mistreatment of Plaintiff's coccidioidmycosis meningistis.

25   However, Plaintiff fails to point to any evidence that Kelso directed prison doctors to show

26   deliberate indifference to his serious medical needs. After receiving three letters from Plaintiff,

27   Kelso's staff – the Controlled Correspondence Unit ("CCU") investigated Plaintiff's complaints.

28

1  (Decl. Shea at ¶ 4.)  The CCU contacted Salinas Valley State Prison health care staff, where

2  Plaintiff was incarcerated, reviewed his Unit Health Record and health care appeal history, and

3  learned that Plaintiff was being evaluated on a regular basis.  (*Id.*, Ex. E.)  Further, CCU

4  determined that, based on the information it received, the prison medical staff was providing for

5  his medical needs.  (*Id.*)  There is no evidence that Kelso knew or should have known, based on

6  the letters received from Plaintiff, and addressed by the CCU, that the numerous medical

7  examinations and treatments Plaintiff received would "inflict a constitutional injury."  *Starr*, 652

8  F.3d at 1208.  Thus, Plaintiff fails to demonstrate a sufficient causal connection between Kelso's

9  oversight as the Federal Receiver and any alleged deliberate indifference to his serious medical

10  needs.

11       Viewing the evidence in the light most favorable to Plaintiff, the undisputed evidence

12  shows that Plaintiff wrote letters to Kelso complaining about his medical treatment.  The CCU,

13  tasked with responding to non-habeas medical complaints (Decl. Kelso at ¶ 6), responded to

14  Plaintiff's concerns, and recommended that Plaintiff keep his current appointments, as well as

15  continue to utilize the administrative appeals process (*Id.*, Ex. E).  Plaintiff has failed to

16  demonstrate that Kelso knew or should have known that his response would have resulted in

17  constitutional injury.  *See Starr*, 652 F.3d at 1208.  Thus, there is an absence of evidence that

18  Kelso knew Plaintiff faced a substantial risk of harm, and failed to take reasonable steps to abate

19  it.  *See Farmer*, 511 U.S. at 837.

20       Accordingly, because there is no genuine issue of material fact as to whether Kelso acted

21  with deliberate indifference to Plaintiff's medical needs, Kelso is entitled to judgment as a matter

22  of law.[3]

23                                **CONCLUSION**

24       Dr. Kalisher's motion to dismiss is GRANTED.  Kelso's motion for summary judgment

25  is GRANTED.  Judgment shall be entered in favor of Defendants.  The Clerk shall terminate all

26

27        [3]  Because the Court grants Kelso's motion for summary judgment on the merits, it is
28  unnecessary to discuss Kelso's remaining arguments.

Order Granting Defendant Kalisher's Motion to Dismiss; Granting Defendant Kelso's Motion For Summary
Judgment

1   pending motions and close the file.

2          IT IS SO ORDERED.

3   DATED: ____11/28/11____

4                                              LUCY H. KOH
                                               United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Granting Defendant Kalisher's Motion to Dismiss; Granting Defendant Kelso's Motion For Summary
Judgment
P:\pro-se\sj.lhk\cr.10\Perry548mtdmsj                                10