IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY PERRY,<br><br>          Plaintiff,<br><br>   vs.<br><br>GLORIA KALISHER and J. CLARK KELSO,<br><br>          Defendants. | No. C 10-2548 LHK (PR)<br><br>ORDER GRANTING DEFENDANT KALISHER'S MOTION TO DISMISS; GRANTING DEFENDANT KELSO'S MOTION FOR SUMMARY JUDGMENT<br><br>(Docket Nos. 33, 35, 38) |

Plaintiff, proceeding *pro se*, filed a fourth amended civil rights complaint pursuant to 42 U.S.C. § 1983 against four Defendants, alleging that they were deliberately indifferent to his serious medical needs. On April 28, 2011, the Court ordered Plaintiff to provide accurate information within thirty days regarding the location of Defendants Susan Pido and Daniel Jardini, so the Marshal could serve them. On June 7, 2011, after receiving no communication from Plaintiff, the Court dismissed unserved Pido and Jardini under Federal Rule of Civil Procedure 4(m). Almost two months later, on August 3, 2011, Plaintiff filed a motion requesting a continuance of this action so as to locate the unserved Defendants. He alleged that on March 22, 2011, he was arrested for a parole violation. After his parole hearing, he was released into a residential drug treatment program in April 2011. Plaintiff states that he was unaware that he was directed to locate unserved Defendants until June 27, 2011, when his parole agent brought

him the documents. The Court had previously advised Plaintiff that it was his responsibility to prosecute this case, keep the Court informed of any address changes, and comply with Court orders in a timely fashion. (Docket No. 22.) Plaintiff's request for an indefinite continuance to locate unserved Defendants, who have already been dismissed, is DENIED. Plaintiff is not prohibited from initiating a new action against unserved Defendants once he is able to provide sufficient information regarding their location.

On April 28, 2011, Defendant Federal Receiver J. Clark Kelso ("Kelso) moved for summary judgment, or alternatively, summary adjudication. On May 2, 2011, Defendant Dr. Gloria Kalisher ("Dr. Kalisher") moved to dismiss this action for failure to exhaust. Plaintiff has not filed an opposition. Having carefully considered the papers submitted, the Court GRANTS Dr. Kalisher's motion to dismiss, and GRANTS Kelso's motion for summary judgment, for the reasons set out below.

## BACKGROUND[1]

According to the operative complaint, Plaintiff told Dr. Kalisher that he needed medication to treat his condition of coccidioidmycosis meningitis. (Fourth Am. Compl. at 3.) Plaintiff alleges that Dr. Kalisher looked at his medical file, and disregarded Plaintiff's concerns because the file did not indicate a positive diagnosis of coccidioidmycosis meningitis. (*Id.*) Plaintiff's medical file showed that he was receiving the following medications: fluconazole, vitamin C, skin care lotion, and A & D ointment for treatment of coccidioidmycosis. (*Id.*) Plaintiff complains that Dr. Kalisher's refusal to send him to emergency care resulting in him having a stroke and being sent to Salinas Valley Memorial Hospital, where he was properly diagnosed with coccidioidmycosis meningitis. (*Id.*)

Also, Plaintiff states that on some unspecified date, Kelso did not take any "responsible action" after Plaintiff sent him a letter regarding inadequate medical care from health care staff at the prison. (*Id.* at 6.) Kelso was appointed as the Federal Receiver for the California prisons' medical care system by Judge Thelton E. Henderson on January 23, 2008 in *Plata, et al. v.*

---

[1] The following facts are undisputed unless otherwise indicated.

*Schwarzenegger, et al.*, Case No. 01-1391 TEH (N.D. Cal.).  Plaintiff alleges that Kelso did nothing to stop him from "being mistreated for his condition of coccidioidmycosis meningitis." (Fourth Am. Compl. at 6.)  Plaintiff argues that because of Kelso's omissions, his medical condition has worsened.  (*Id.*)

## MOTION TO DISMISS FOR FAILURE TO EXHAUST

I.  <u>Legal Standard</u>

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  28 U.S.C. § 1997e(a).  Nonexhaustion under § 1997e(a) is an affirmative defense; that is, Defendants have the burden of raising and proving the absence of exhaustion.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.  If the Court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice.  *Id.* at 1120.

Failure to exhaust is an affirmative defense under the PLRA.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints.  *Id.* at 215-17.  As there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process.  *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005).

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides its inmates the right to file administrative

appeals alleging misconduct by correctional officers. Cal. Code Regs. tit. 15, § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 ("602") and proceed through several levels of appeal: (1) informal level grievance filed directly with any correctional staff member, (2) first formal level appeal filed with one of the institution's appeal coordinators, (3) second formal level appeal filed with the institution head or designee, and (4) third formal level appeal filed with the CDCR director or designee ("Director's level"). Cal. Code Regs. tit. 15, § 3084.5; *Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir. 2009). This satisfies the administrative remedies exhaustion requirement under Section 1997e(a).

## II.     Analysis

Dr. Kalisher argues that Plaintiff failed to exhaust his claim against her. Dr. Kalisher has submitted copies of both appeals that Plaintiff filed at California Training Facility ("CTF"). (Decl. Pherigo at ¶ 5.) She argues that neither appeal exhausted Plaintiff's underlying federal claim that she exhibited deliberate indifference to his serious medical needs.

Administrative remedies are not exhausted where the grievance, liberally construed, does not have the same subject and same request for relief. *See generally O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (concluding that with liberal construction, grievance requesting a lower bunk due to poor balance resulting from a previous brain injury was not equivalent to, and therefore did not exhaust administrative remedies for, claims of denial of mental health treatment in violation of the ADA and Rehabilitation Act).

Plaintiff arrived at CTF on April 30, 2009. (Doc. No. 10 at 3.) On July 15, 2009, he began to experience pain throughout his body. (*Id.*) He was referred to Dr. Kalisher on July 17, 2009, and saw her the same day. (*Id.*) In September 2009, Plaintiff was transferred to Salinas Valley State Prison. (*Id.* at 5.)

In his first administrative appeal, CTF S-09-1890, Plaintiff grieved that, on July 15, 2009, Correctional Officer McFarland refused to issue him a pass to the medical clinic after Plaintiff complained to him about experiencing Valley Fever symptoms. (*Id.*, Ex. A.) Plaintiff requested

that McFarland be reprimanded for his unprofessional reactions. (*Id.*) Plaintiff's appeal was ultimately denied at the Director's Level of Review.

Although this grievance touched on Plaintiff's medical condition, Plaintiff requested that McFarland be reprimanded for disbelieving his complaints. This 602 could not have alerted prison officials to his claim that, as a result of Dr. Kalisher's refusal to summon emergency care for him, he suffered a stroke. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.") (internal quotation marks omitted). Plaintiff's grievance did not include sufficient information "to allow prison officials to take appropriate responsive measures." *Id.* (citation and internal quotation omitted) (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that order).

In his second administrative appeal, CTF D-09-12516, Plaintiff grieved that he was not receiving requested copies of his medical records from January through August 2009. (*Id.*, Ex. B.) His request for relief was to receive copies of those medical records so that he could litigate. (*Id.*) At the First Level of Review, Plaintiff's appeal was granted. (*Id.*) Like Plaintiff's first administrative appeal, this grievance was also insufficient to alert prison officials to the nature of Plaintiff's federal complaint that he believed Dr. Kalisher disregarded his medical concerns. *See Griffin*, 557 F.3d at 1120. Prison officials would not have had any reason to infer from this grievance that Plaintiff believed his medical care under Dr. Kalisher was improper. *See id.*

Because neither grievance, liberally construed, had the same subject and request for relief as that alleged in this federal action, Plaintiff has failed to exhaust his claim. Accordingly, Dr. Kalisher's motion to dismiss is GRANTED.[2]

///

---

[2] Dr. Kalisher also moves to dismiss the claims against Pido and Jardini. However, the Court has already dismissed those Defendants under Rule 4(m). Further, counsel for Dr. Kalisher has never entered her appearance on behalf of these Defendants. Accordingly, the motion to dismiss claims against Pido and Jardini for failure to exhaust is denied.

**MOTION FOR SUMMARY JUDGMENT**

I.   <u>Legal Standard</u>

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The Court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

II.   <u>Analysis</u>

Plaintiff claims that Kelso failed to take action after he learned that Plaintiff was receiving "inadequate medical care" from prison health care staff. (Fourth Am. Compl. at 6.)

He alleges that, as a result of Kelso's inaction, Plaintiff's medical condition has worsened, he has chronic arthritis, and he has to take medication for the remainder of his life. (*Id.*) Kelso argues that he was not personally involved in Plaintiff's care at any time, and further, that he was not aware of Plaintiff's medical needs. (MSJ at 9-11.)

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of a defendant's response to that need. *See McGuckin*, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059 (*citing Estelle*, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *Id.* at 1059-60 (*citing Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

An administrator or supervisor may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help. *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006). "It has long been clearly established that '[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" *Preschooler II v. Davis*, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted). A supervisor therefore generally is liable "if there exists either (1) his or her personal involvement in the constitutional deprivation,

or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotation marks and citation omitted). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, . . . or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks and citation omitted).

Here, even assuming that Plaintiff had a "serious" medical need, there is an absence of evidence that Kelso knew that Plaintiff faced a substantial risk of serious harm, and then disregarded that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Kelso was not personally involved in the medical care of Plaintiff. *See Starr*, 652 F.3d at 1207. Kelso is an administrator, and does not examine or treat patients. (Decl. Kelso at ¶ 3.) He did not have any direct involvement in Plaintiff's care. (*Id.* at ¶ 7.) As the Federal Receiver, Kelso is responsible for "bringing the level of medical care provided to California's inmates up to federal constitutional standards." (*Id.* at ¶ 2.) He rarely "focus[ed] on instances of individual inmate care given at the institutional level nor would it [have been] feasible for [him] to be involved in decisions regarding individual inmates." (*Id.* at ¶ 3.) He made broad policy decisions affecting 160,000 inmates in thirty-three prisons to "remedy the systemic problems within the prison medical health care system." (*Id.*) That Kelso received Plaintiff's letter about inadequate medical care (Fourth Am. Compl. at 6) does not demonstrate that Kelso participated in any alleged constitutional violations. Therefore, there is an absence of evidence that Kelso had any personal involvement in the medical care of Plaintiff.

Moreover, even assuming there was a constitutional violation, there is an absence of evidence connecting Kelso's actions to that violation. *See Starr*, 652 F.3d at 1207. Plaintiff alleges Kelso failed to prevent mistreatment of Plaintiff's coccidioidmycosis meningistis. However, Plaintiff fails to point to any evidence that Kelso directed prison doctors to show deliberate indifference to his serious medical needs. After receiving three letters from Plaintiff, Kelso's staff – the Controlled Correspondence Unit ("CCU") investigated Plaintiff's complaints.

(Decl. Shea at ¶ 4.)  The CCU contacted Salinas Valley State Prison health care staff, where Plaintiff was incarcerated, reviewed his Unit Health Record and health care appeal history, and learned that Plaintiff was being evaluated on a regular basis.  (*Id.*, Ex. E.)  Further, CCU determined that, based on the information it received, the prison medical staff was providing for his medical needs.  (*Id.*)  There is no evidence that Kelso knew or should have known, based on the letters received from Plaintiff, and addressed by the CCU, that the numerous medical examinations and treatments Plaintiff received would "inflict a constitutional injury." *Starr*, 652 F.3d at 1208.  Thus, Plaintiff fails to demonstrate a sufficient causal connection between Kelso's oversight as the Federal Receiver and any alleged deliberate indifference to his serious medical needs.

Viewing the evidence in the light most favorable to Plaintiff, the undisputed evidence shows that Plaintiff wrote letters to Kelso complaining about his medical treatment.  The CCU, tasked with responding to non-habeas medical complaints (Decl. Kelso at ¶ 6), responded to Plaintiff's concerns, and recommended that Plaintiff keep his current appointments, as well as continue to utilize the administrative appeals process (*Id.*, Ex. E.).  Plaintiff has failed to demonstrate that Kelso knew or should have known that his response would have resulted in constitutional injury.  *See Starr*, 652 F.3d at 1208.  Thus, there is an absence of evidence that Kelso knew Plaintiff faced a substantial risk of harm, and failed to take reasonable steps to abate it.  *See Farmer*, 511 U.S. at 837.

Accordingly, because there is no genuine issue of material fact as to whether Kelso acted with deliberate indifference to Plaintiff's medical needs, Kelso is entitled to judgment as a matter of law.[3]

## CONCLUSION

Dr. Kalisher's motion to dismiss is GRANTED.  Kelso's motion for summary judgment is GRANTED.  Judgment shall be entered in favor of Defendants.  The Clerk shall terminate all

---

[3] Because the Court grants Kelso's motion for summary judgment on the merits, it is unnecessary to discuss Kelso's remaining arguments.

1 pending motions and close the file.

2     IT IS SO ORDERED.

3 DATED: 11/28/11

*Lucy H. Koh*
LUCY H. KOH
United States District Judge